USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/10/20

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                                           :
UNITED STATES OF AMERICA,                                  :
                                                           :
                -v-                                        :     1:19-cr-00011-GHW
                                                           :
NADER FANA,                                                :     ORDER
                                                           :
                                Defendant.                 :
-----------------------------------------------------------X
```

GREGORY H. WOODS, United States District Judge:

     Defendant Nader Fana dealt crack cocaine across the street from a school. The Court sentenced him to 16 months of incarceration on March 13, 2020. Dkt. No. 73. That sentence represented a substantial downward variance from the 33-41 month advisory guideline range provided under the Sentencing Guidelines, as a result of the quantity of drugs sold by Mr. Fana and the two criminal history points resulting from his 2013 conviction for robbery in the third degree. In imposing that downward variance, as stated on the record, the Court was very mindful of the admonition contained in 18 U.S.C. § 3553(a) to impose a sentence that was "not greater than necessary" to comply with the purposes set forth in the statute. Now, less than three weeks after being sentenced, Mr. Fana requests that the Court direct the Bureau of Prisons (the "BOP") to designate him immediately to a halfway house or home confinement because, he contends, the Attorney General has failed to comply with his obligations to consider pre-release custody under 18 U.S.C. § 3624(c)(1) and (2)(a). Because Mr. Fana has no clear right to be designated to a halfway house or home confinement at this time, Mr. Fana's motion is DENIED.

## I. BACKGROUND

On January 7, 2019, Mr. Fana and his two co-defendants were named in a one count indictment charging them with conspiracy to violate the narcotics laws of the United States in violation of 28 U.S.C. §846. Dkt. No. 1. Mr. Fana appeared before Magistrate Judge Parker on January 11, 2019, and was released subject to a personal recognizance bond and other conditions. Dkt. No. 14. After a series of conferences to schedule discovery and motion practice, the Court entered an order scheduling trial on June 6, 2019. Dkt. No. 32. Mr. Fana pleaded guilty before Magistrate Judge Lehrburger on September 24, 2019, Dkt. No. 48, and the Court accepted his plea on September 29, 2019. Dkt. No. 51. Mr. Fana remained at liberty following his plea.

The Court conducted a sentencing hearing for Mr. Fana on January 29, 2020. Dkt. No. 76 ("Tr."). After properly calculating the defendant's advisory sentencing guidelines range, the Court analyzed the factors set forth in 18 U.S.C. § 3553(a) and concluded that a sentence of sixteen months and three years of supervised release represented the sentence that was "sufficient but not greater than necessary" to comply with the purposes of sentencing.

Among other things, the Court considered the nature of Mr. Fana's criminal conduct: he sold crack across the street from a school, "a crime that is very serious in that it is one that . . . hurts not just the users of the narcotics who are buying this substance, but also harms the entire community." Tr. 20-1-3. The Court noted that Mr. Fana was 29 years old at the time of sentencing, and that he was a citizen of the Dominican Republic who was amenable to removal as a result of his conviction. Tr. at 20:12-21:7. The Court considered the need for personal deterrence, commenting that "Mr. Fana faces what I will describe as structural issues or headwinds. He has limited education, limited legitimate work history, and a long history of substance abuse. Mr. Fana has those two prior brushes with the law and yet engaged in this offense." Tr. 23:4-9. The Court also considered Mr. Fana's need for medical care. On the basis of the pre-sentence report for Mr. Fana,

2

which noted that Mr. Fana had no physical health issues, the Court observed at sentencing that "Mr. Fana is blessed with good physical health." Tr. at 21:18.

On March 29, 2020, Mr. Fana filed this motion (the "Motion"). Dkt. No. 10. The Motion requests that the Court issue an order "(1) directing the Director of the Bureau of Prisons ("BOP") to issue a decision within the next ten days as to how Nader Fana will serve his last 11 months in custody; (2) recommending to the BOP that Mr. Fana serve the remainder of his sentence in home confinement, or immediate release to a halfway house and as much time as permitted under the law, thereafter, in home confinement, 18 U.S.C. 3624(c)(1) & (2); (3) or in the alternative, if the [sic] no action is taken by the BOP, to resentence Mr. Fana to time served." Motion at 2. The Court issued an order on March 30, 2020, in which it declined to act on the request *ex parte*, and directed the United States to respond to the Motion no later than April 6, 2020. Dkt. No. 82. The United States filed its opposition on April 2, 2020. Dkt. No. 83. Mr. Fana filed his reply on April 2, 2020. Dkt. No. 86.

Mr. Fana supplemented his request by letter motion on April 5, 2020 (the "Supplemental Motion"). Dkt. No. 88. In his supplemental motion, Mr. Fana pointed to selected portions of 34 U.S.C. § 60541(g)(1) to argue that the Attorney General had failed to fulfill his responsibilities under that statute. The United States opposed the Supplemental Motion on April 5, 2020. Dkt. No. 89.

## II. ANALYSIS

### A. Mandamus is Not Warranted

#### a. Legal Standard

The Court has construed Mr. Fana's motion as an application for mandamus under 28 U.S.C. 1361. *See* Dkt. No. 82.[1] The statute provides that "[t]he district courts shall have original

---

[1] Although prepared by counsel, Mr. Fana's motion does not describe the legal basis for his claim for relief. In its order scheduling briefing on the motion, the Court construed the motion as an application for mandamus, and the Government's briefing has been based upon that premise. Mr. Fana has not contended that his claim is brought under any other statute. Because Mr. Fana is not proceeding *pro se*, the Court is not obligated to interpret his submissions "to

jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "[J]urisdiction under the mandamus statute is limited to actions seeking to compel the performance of a nondiscretionary duty." *Duamutef v. I.N.S.*, 386 F.3d 172, 180 (2d Cir. 2004) (*quoting Heckler v. Ringer*, 466 U.S. 602, 616, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984) ("The common-law writ of mandamus, as codified in 28 U.S.C. § 1361, is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty.")). "The prerequisites for issuance of a writ of mandamus are peremptory: '(1) a clear right in the plaintiff to the relief sought; (2) a plainly defined and peremptory duty on the part of the defendant to do the act in question; and (3) no other adequate remedy available.'" *Anderson v. Bowen*, 881 F.2d 1, 5 (2d Cir. 1989) (*quoting Lovallo v. Froehlke*, 468 F.2d 340, 343 (2d Cir.1972)).

### b. Mr. Fana Has No Right to Mandamus Under 18 U.S.C. § 3624(c)

Mr. Fana is not entitled to the relief that he seeks because the BOP has not failed to perform a statutory duty currently owing to him under 18 U.S.C. § 3624(c). Section 3624 provides, in pertinent part:

> (c) Prerelease Custody.—
>
> (1) In general.—
> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.
>
> (2) Home confinement authority.—
> The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months. The Bureau of Prisons shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home

---

raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quotation omitted).

confinement for the maximum amount of time permitted under this paragraph.

Section 3624(c) imposes a mandatory duty on the BOP. As Mr. Fana argues, the statute uses the word "shall" to describe the BOP's obligations. However, Mr. Fana's argument completely ignores the text that follows the word "shall," which makes it clear that the BOP has not failed to satisfy a duty owing to Mr. Fana at this time, and that the BOP maintains discretion regarding how best to implement its statutory authority.

First, the statute only requires that the BOP take steps to ensure that the prisoner spend a "portion of the final months" of a prisoner's term under the conditions described. Mr. Fana is not yet in the final months of his term. Mr. Fana was sentenced to a sixteen month term of imprisonment just over two months ago. At an irreducible minimum, the "final months" of his sentence are the last two months of the sentence—the BOP has many months to consider alternative placements for Mr. Fana within the timeline described by the statute.[2]

Second, the statute does not require that the BOP use any particular method to satisfy the statute's stated goals. As a result, the BOP can comply with its statutory duties without placing the defendant in a halfway house or in home confinement, as Mr. Fana demands. Section 3624(c) asks the BOP to "ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), *under conditions* that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions *may* include a community correctional facility." 18 U.S.C. § 3624(c)(1). The statute requires that the BOP consider placing the inmate in "conditions" that provide the inmate a "reasonable opportunity" to achieve the goals of the statute. It does not require that a prisoner be released to a halfway house—the relevant provision states that the conditions "may" include a

---

[2] Note too that the statute says that the amount of time that an inmate may spend under such conditions is "not to exceed 12 months." At the time of his motion, Mr. Fana still had more than 12 months remaining on his sentence, assuming no good time credit.

5

community correctional facility. Similarly, home confinement "may" be used by the BOP in implementing its authority under the statute—it is not mandatory. 18 U.S.C. § 3624(c)(2). To the extent that Mr. Fana claims that the BOP has failed to comply with the statute because it has failed to designate him to home confinement or a halfway house now, his claim for mandamus clearly fails because he has no right to such a designation.

Third, the statute requires that the BOP act to implement its goals only "to the extent practicable." To the extent that it is not practicable for the BOP to implement its authority under Section 3624(c), it need not do so. There is no express statutory limitation on the BOP's authority to determine the extent to which it is practicable to provide an inmate the conditions described in the statute. There is, for example, no bar on the BOP's authority to determine that it is not practicable to place Mr. Fana in home confinement or a halfway house because it is prioritizing access to those resources for inmates with particular health concerns or vulnerabilities.

Section 3624(c) should be considered in the context of the broad discretionary authority granted to BOP to designate where inmates serve their sentences. *See* 18 U.S.C. § 3621(b). By statute, courts are prohibited from reviewing a designation by the BOP. *Id.* ("Notwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court.").

Because Mr. Fana does not have a clear right under Section 3624(c) to an immediate assessment by the BOP, or a right to placement in a halfway house or home confinement, his claim for mandamus under that statute fails. It also fails because the BOP retains broad discretionary authority with respect to determinations regarding placements generally, and, in particular, the extent to which steps are "practicable" to implement its authority under Section 3624(c).

### c. Mr. Fana Has No Right to Mandamus Under 34 U.S.C. § 60541

Mr. Fana is not entitled to mandamus as a result of a failure by the Attorney General to act under 34 U.S.C. § 60541 ("Section 60541"). In his Supplemental Motion, Mr. Fana contends that

6

"the language of the statute is mandatory and accordingly, provides further support Mr. Fana's argument that the BOP must make a determination in his case as to when and where he will spend the remainder of his sentence." Supplemental Motion at 3. Again, however, Mr. Fana sees only the word "shall" in the statute, and ignores the remainder of the statutory text, which provides no support for his argument.

Section 60541 reads in pertinent part as follows:

(a) In general

The Attorney General, in coordination with the Director of the Bureau of Prisons, shall, subject to the availability of appropriations, conduct the following activities to establish a Federal prisoner reentry initiative:

(1) The establishment of a Federal prisoner reentry strategy to help prepare prisoners for release and successful reintegration into the community, including, at a minimum, that the Bureau of Prisons--

(A) assess each prisoner's skill level (including academic, vocational, health, cognitive, interpersonal, daily living, and related reentry skills) at the beginning of the term of imprisonment of that prisoner to identify any areas in need of improvement prior to reentry;

(B) generate a skills development plan for each prisoner to monitor skills enhancement and reentry readiness throughout incarceration;

(C) determine program assignments for prisoners based on the areas of need identified through the assessment described in subparagraph (A);

(D) ensure that priority is given to the reentry needs of high-risk populations, such as sex offenders, career criminals, and prisoners with mental health problems;

(E) coordinate and collaborate with other Federal agencies and with State, Tribal, and local criminal justice agencies, community-based organizations, and faith-based organizations to help effectuate a seamless reintegration of prisoners into communities;

(F) collect information about a prisoner's family relationships, parental responsibilities, and contacts with children to help prisoners maintain important familial relationships and support systems during incarceration and after release from custody; and

(G) provide incentives for prisoner participation in skills development programs

34 U.S.C. § 60541.

Nothing in the statute provides Mr. Fana a right—much less a clear right—to the relief that he seeks. Mr. Fana demands that the BOP immediately determine "where and when Mr. Fana will

be transferred out of prison into a reentry . . . ." But the statute says nothing about the timing for such a determination. It requires the establishment, subject to the availability of appropriations, of a program to support prisoner reentry. It provides Mr., Fana no right to a determination regarding his placement.

### B. Mr. Fana Must Satisfy The Statutory Preconditions for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A)

The Court must deny Mr. Fana's application for compassionate release under 18 U.S.C. § 3582(c)(1)(A) because the statutory preconditions have not been satisfied. In addition to his application for mandamus relief, Mr. Fana requested that the Court resentence him to time served. The Court denied this application without prejudice in its March 30, 2020 order, Dkt. No. 82, but takes this opportunity to expand on the reason why the application was denied without prejudice.

18 U.S.C. § 3582(c)(1)(A) reads in pertinent part as follows: "The court *may not* modify a term of imprisonment once it has been imposed *except that* . . . the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . ." *Id.* (emphasis added). The language of this provision ("[t]he court may not") expressly prohibits the Court from granting relief unless the statutory preconditions are satisfied.

Congress' intent is best discerned from the text of the statute that it passed, and this statute prohibits the Court from acting except upon satisfaction of the conditions laid out in it. Because the statute expressly bars the court from taking action absent satisfaction of those conditions, it is unlike the administrative exhaustion requirement evaluated by the Supreme Court in *Bowen v. City of New York*, 476 U.S. 467, 478, 106 S. Ct. 2022, 2029, 90 L. Ed. 2d 462 (1986), and cannot be waived by the

8

Court. Mr. Fana had not exhausted the statutory preconditions before requesting relief from the Court, therefore, the Court was obliged to deny the request.

**C. The Court Makes No Recommendation to the BOP Regarding Mr. Fana**

The Court declines to make a recommendation to the BOP regarding how to treat Mr. Fana. The BOP is dealing with a systemic issue. The Court understands that, consistent with Attorney General Barr's March 26, 2020 Memorandum, Dkt. No. 85-1, the BOP is considering home confinement for certain inmates. The first factor identified for consideration in Attorney General Barr's memorandum is the "age and vulnerability" of the inmate to COVID-19 . . . ." *Id.* Focusing the limited resources of the BOP to assist those inmates who are particularly vulnerable to COVID-19 is reasonable. Mr. Fana does not have any of the characteristics of a person who is particularly vulnerable to COVID-19: he is relatively young and is in good health.

Courts regularly apply the six factor test set forth in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) (the "TRAC factors") to evaluate whether an agency's adjudication delay is reasonable under the Administrative Procedure Act (the "APA"). Mr. Fana has not brought this matter under the APA, but in reviewing Mr. Fana's motion, the Court is reminded of the fourth TRAC factor, which asks the Court to evaluate "the effect of expediting delayed action on agency activities of a higher or competing priority . . . ." Mr. Fana's application understandably focuses on himself. But his demands for the immediate attention of the BOP seek to focus the limited resources of the agency on him—a healthy, young man—and, consequently, divert them from those with underlying medical conditions and greater vulnerability to COVID-19, which are arguably of a higher priority. The Court declines to recommend that the BOP focus on Mr. Fana's needs, rather than on those of the more vulnerable.

**III. CONCLUSION**

Mr. Fana's application for mandamus relief is DENIED. His request for compassionate relief under 18 U.S.C. § 3582(c)(1)(A) is DENIED without prejudice. The Court makes no recommendation to the BOP regarding Mr. Fana.

The Clerk of Court is directed to terminate the motions pending at Dkt. Nos. 85 and 88.

SO ORDERED.

Dated: April 10, 2020

_____
GREGORY H. WOODS
United States District Judge